UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ROJAS, et al.,<br><br>          Plaintiffs,<br><br>      v.<br><br>HAMM, et al.,<br><br>          Defendants. | Case No. 18-cv-01779-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 62 |

      While working at a construction project, Maurillo Rojas was crushed by a steam roller manufactured by Hamm AG, a German corporation ("Hamm"). Complaint ("Compl.") at ¶¶ 13, 16, attached as Exhibit A to Declaration of Alexandra Hamilton ("Hamilton Decl.") [Dkt. No. 65]. The plaintiffs, who are surviving family members of Maurillo Rojas, bring product liability and negligence claims against Hamm and other defendants. The parties agree that there is no general jurisdiction in California over Hamm,[1] but in a previous order, I granted plaintiffs limited jurisdictional discovery to determine if there is specific personal jurisdiction over it. That discovery is complete, and Hamm again moves to dismiss because it is not subject to specific personal jurisdiction under either the "stream of commerce plus" test or an alter ego theory. I agree, and for the reasons stated below, the motion to dismiss is granted.

<b>BACKGROUND</b>

      In addition to Hamm, plaintiffs Rosa Rojas, Jessica Rojas, Ricardo Rojas, and Osvaldo Rojas also sued Wirtgen America, Inc. ("Wirtgen America"), and Sunbelt Rentals, Inc. ("Sunbelt") for the death of Maurillo Rojas. Compl. at ¶¶ 4-7. Hamm is a German corporation,

---

[1] *See* Plaintiffs' Response in Opposition to Hamm AG's Renewed and Amended Motion to Dismiss for Lack of Personal Jurisdiction ("Oppo.") at 4–5 [Dkt. No. 64].

1   whose headquarters and principal place of business are in Tirschenreuth, Germany. *Id.* at ¶ 7.

2   Wirtgen America is incorporated in and has its principal place of business in Tennessee. *Id.* at ¶ 6.

3   Sunbelt is incorporated in and has its principal place of business in South Carolina. *Id.* at ¶ 5.

4   Plaintiffs bring claims for strict product liability, negligence, negligent failure to warn or instruct,

5   negligent bailment, wrongful death, negligent hiring, training and supervision, and a survival

6   cause of action. *Id..* at ¶¶ 17–79, 86–89.

7         The parties agree that Hamm is not subject to general personal jurisdiction in California.

8   The issue this Order decides is whether Hamm is subject to specific personal jurisdiction in this

9   state. After the close of jurisdictional discovery, Hamm again moved to dismiss for lack of

10  personal jurisdiction. Hamm's Renewed & Amended Motion to Dismiss for Lack of Personal

11  Jurisdiction ("MTD") [Dkt. No. 62].

12                          **LEGAL STANDARD**

13        Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to

14  dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that

15  jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

16  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the

17  defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the plaintiff

18  cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the

19  complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Conflicts

20  in the evidence must be resolved in the plaintiff's favor. *Id.* "Where, as here, the defendant's

21  motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

22  make a prima facie showing of jurisdictional facts to withstand a motion to dismiss."

23  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). In such cases,

24  "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie

25  showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th

26  Cir. 1995).

27        "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

28  law of the state in which the district court sits applies." *Core-Vent Corp. v. Novel Indus. AB*, 11

F.3d 1482, 1484 (9th Cir. 1993) (citation omitted). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.*; Cal. Civ. Proc. Code § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

"There are two types of personal jurisdiction: general and specific." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "[G]eneral jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. It exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). Such contracts must "be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Specific jurisdiction arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a defendant:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzennegger*, 374 F.3d at 802.

3

The first prong of that test may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation and internal quotation marks omitted).  In tort cases, courts typically inquire whether a defendant "purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." [2] *Id.* (citation and internal quotation marks omitted).  In contrast, in contract cases, courts typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (citation and internal punctuation omitted).

With regard to the second prong, courts "measure this requirement in terms of 'but for' causation." *Bancroft & Masters*, 223 F.3d at 1088.  The plaintiff bears the burden of satisfying the first two prongs of the test.  *Schwarzenegger*, 374 F.3d at 802.

If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable."  *Id.*  If the plaintiff cannot satisfy either of the first two prongs, personal jurisdiction is not established in the forum state.  *Id.*

## DISCUSSION

Hamm asserts that it is not subject to specific jurisdiction in California and is not the "alter ego" of Wirtgen America such that their separate identities can be disregarded and jurisdiction can be asserted over it.  In response, plaintiffs argue that the evidence supports a finding of specific

---

[2] However, as the Supreme Court reemphasized in *Walden v. Fiore*, 571 U.S. 277, 285 (2014), the "effects" "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."

4

1   personal jurisdiction over Hamm or, alternatively, that it is the alter ego of Wirtgen America.[3]  As

2   described below, I find that plaintiffs have not established that Hamm is subject to specific

3   personal jurisdiction in California under either the stream of commerce plus test or the alter ego

4   theory.

5   **I.      STREAM OF COMMERCE PLUS TEST**

6         **A.  Purposeful Availment**

7         Plaintiffs argue that Hamm purposefully directed its activities to California by having a

8   "regular plan for the distribution of its products with the goal of achieving a commercial benefit

9   from the sale of those products in California" and by placing "its products into the stream of

10  commerce with the expectation that they will be purchased in California."  Oppo. at 8.  To

11  evaluate this issue, the Ninth Circuit has adopted Justice O'Connor's "stream-of-commerce plus"

12  analysis, holding that the "placement of a product into the stream of commerce, without more, is

13  not an act purposefully directed toward a forum state."  *Holland Am. Line Inc. v. Wärtsilä N. Am.,*

14  *Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S.

15  102, 112 (1987)).  "Even a defendant's awareness that the stream of commerce may or will sweep

16  the product into the forum state does not convert the mere act of placing the product into the

17  stream of commerce into an act purposefully directed toward the forum state."  *Id.*  A defendant

18  must do "something more" than placing a product into the stream of commerce to support a theory

19  of purposeful availment.[4]  *Id.*

20        Although it is undisputed that Hamm placed the subject roller into the stream of

21  commerce, plaintiffs have not established that Hamm has engaged in the requisite "something

22  more" to establish jurisdiction.  Hamm submitted a declaration from Matthias Löb, a Manager for

23  Hamm and its Federal Rule of Civil Procedure 30(b)(6) witness, stating that Wirtgen America

24

25  [3] Plaintiff in Intervention State Compensation Insurance Fund joins plaintiffs' opposition.  [Dkt.
26  No. 68].

27  [4] Plaintiffs opposition contains a lengthy discussion regarding the jurisprudence around purposeful
    availment and personal jurisdiction.  Oppo. at 5–10.  This does not change the requirement that
28  courts in the Ninth Circuit must apply the "stream-of-commerce plus" theory.  *See Holland*, 485
    F.3d at 459.

United States District Court
Northern District of California

instructed it to ship the steam roller to California. Second Amended Declaration of Matthias Löb ("Löb Decl."), attached as Exhibit F to MTD, at ¶ 23.1. Of the over 6,000 contracts that Hamm has entered with Wirtgen America between November 2012 and December 2016, just 38—less than 1%—of those shipments were directed to ports in California. *Id.* Courts have found that arranging for shipment of less than 1% of products into a forum state at the direction of non-resident customers is insufficient to establish purposeful availment. *See Fernandez v. McDaniel Controls, Inc.*, 999 F. Supp. 1365, 1368 (D. Haw. 1998).

Additionally, it is uncontroverted that since at least 2004, Hamm has not had property, offices, other facilities, a bank account, address, or post office box in California, or a phone number with a California area code. Löb Decl. at ¶ 7. Since 2004 it has not had employees or agents residing in California or subject to California's income, use, or property tax laws. *Id.* at ¶ 8. It has not obtained a seller's permit, paid income, use or property taxes, or purchased on-air advertising for distribution or broadcast in California. *Id.* at ¶¶ 9–11. It has not entered into a contract with a resident of California for the sale of its products or for service on or maintenance of one of its products. *Id.* at ¶¶ 12–14. Though Hamm provides a warranty to the three companies with which it contracts, this warranty does not transfer to the customers of those companies.[5] Deposition of Matthias Löb ("Löb Depo."), attached as Exhibit D to MTD, at 55–57 [Dkt No. 62-4]. All of these facts weigh against a finding of purposeful availment by Hamm toward California.

Plaintiffs point to Hamm's website as evidence of purposeful availment. Oppo. at 2, 8-9. They argue that because the website advertises its products and directs American visitors to Wirtgen America for customer support, sales, and distribution, Hamm has availed itself to California and established a regular plan for the distribution of its products there. *Id.* at 2, 8. But "a mere web presence is insufficient to establish personal jurisdiction." *Holland*, 485 F.3d at 460 (citations omitted). The Ninth Circuit has held that a website that "does not provide any direct

---

[5] In addition to Wirtgen America, Hamm also sells its United States-bound products to Wacker Neuson Logistics Americas, LLC (headquartered in Germantown, Wisconsin) and Resansil, Inc. (headquartered in Miami, Florida). Löb Decl. at ¶ 15.

1   means for purchasing parts or requesting services" but that "provides information on the various

2   products manufactured [by the company] and redirects potential customers to the appropriate

3   subsidiary" is a passive website that is not targeted at any state in particular. *Id.* Hamm's website

4   does not allow visitors to purchase products on its website, and only provides them with

5   information and directs them to Wirtgen America's website to find a dealer. *See* Löb Decl. ¶ 11;

6   Exhibits B-D, attached to Hamilton Decl. [Dkt. No. 65]. While the website can tell when a visitor

7   is in the United States, there is no evidence to suggest that it identifies California visitors

8   specifically, or that it changes to target them. Hamilton Decl. at ¶ 6. Hamm's website is passive

9   and does not help plaintiffs show purposeful availment.

10        Plaintiffs also argue that because Hamm shipped products directly to California, Hamm

11   has "continuously availed itself to California markets." Oppo. at 8–9. They claim that this shows

12   that Hamm's connections to California are not "random, fortuitous . . . attenuated, or the unilateral

13   activity of another party or a third person." *Id.* at 9 (internal quotation marks omitted). However,

14   Hamm submitted evidence to show that it delivers these products to its customers in Germany and

15   only arranges for shipment at the direction of its customers. Löb Decl. at ¶ 23.1. Hamm "issues a

16   confirmation order agreeing to sell the goods 'CIP'" (Carriage and Insurance Paid to) in exchange

17   "for a bill of lading naming Wirtgen America as the 'Consignee' for shipment to whatever place

18   Wirtgen America directs that they be sent." MTD at 7; Löb Decl. at ¶ 23. Löb explained that this

19   designation means that Hamm delivered the subject roller to Wirtgen America in Germany, where

20   Wirtgen America assumed the risk of loss. Löb Decl. at ¶ 23. Plaintiffs do not dispute that the

21   risk of loss transferred to Wirtgen America in Germany, but argue that shipping products to

22   California, even under a CIP label and at the direction of Wirtgen America, subjects Hamm to

23   specific jurisdiction in California. Oppo. at 9.

24        Plaintiffs are correct in contending that the mere existence of a "free on board" designation

25   is not enough to shield a nonresident defendant from what would otherwise be a proper exercise of

26   jurisdiction.[6] *See Taubler v. Giraud*, 655 F.2d 991, 994–96 (9th Cir. 1981) (finding jurisdiction in

27

28   _____

     [6] F.O.B., an acronym for Free on Board, is "[a] mercantile-contract term allocating the rights and
     duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss,

                                                    7

California proper notwithstanding an "FOB France" designation because the defendants had

entered into a contract to sell wine in California with California residents, sent samples to

California, and promoted their products in California); *Pac. Pulp Molding, Inc. v. Burchfield*,

No.15-CV-1602, 2015 WL 12672701, at *6 (S.D. Cal. Sept. 28, 2015) (finding an "FOB

Alabama" designation did not shield defendants from California jurisdiction because their product

included a two-year warranty, indicating a continuing responsibility to the plaintiff in California);

*Excel Plas. Inc.*, 2007 WL 2853932, at *8 n.11 (finding a defendant is not automatically shielded

from specific jurisdiction in California because of an "FOB Japan" designation).  But the FOB

designation is not the only reason Hamm argues that it has not purposefully availed itself to

California, and plaintiffs have not identified purposeful activity in the forum state to justify

jurisdiction.

Plaintiffs raised two cases at the hearing to argue that coordinating shipments into a forum

state can be evidence of purposeful direction, but neither is helpful to them.  In *Berven v. LG

Chem, Ltd.*, an e-cigarette battery manufactured by the non-resident defendant exploded, injuring a

California resident.  No. 18-cv-01542, 2019 WL 1746083, at *1 (E.D. Cal. Apr. 18, 2019).  The

defendant moved to dismiss the case for lack of personal jurisdiction, arguing that while it shipped

batteries to California, sold batteries to California residents, and marketed its batteries in

California, those contacts were irrelevant because the battery at issue had been distributed by an

unauthorized dealer.  *Id.* at *9.  The court rejected this argument and applied the stream of

commerce plus theory to find that the defendant had extensive contacts with California regarding

its batteries, including its "regular flow" or "regular course" of sales in California.  *Id.* at *13.  The

facts here are easily distinguishable.  The defendant in *Berven* had "extensive contacts with

California," including the "sale and shipment of thousands if not millions" of batteries,

establishing distribution networks in California, and marketing, promoting, and advertising the

---

whereby the seller must clear the goods for export, and the buyer must arrange for transportation.
The seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass the
transporter's rail. The buyer is responsible for all costs of carriage." *Excel Plas, Inc. v. Sigmax
Co.*, No. 07-CV-578, 2007 WL 2853932, at *4 n.5 (S.D. Cal. Sept. 27, 2007) (citing Black's Law
Dictionary (8th ed. 2004)).

8

batteries in California. *Id.* at \*10.

Plaintiffs also cited *Haines v. Get Air LLC*, No. 15-cv-00002, 2017 WL 1067777 (D. Ariz. Feb. 24, 2017), where a non-resident foam manufacturer was found to have purposefully availed itself of Arizona by doing business with customers in Arizona. 2017 WL 1067777, at \*8. Though the manufacturer tried to argue that sales to Arizona customers made up only a small portion of its total business, the court held that even sales made to one Arizona customer would demonstrate "more than a random or fortuitous contact" with the forum. *Id.* (internal quotation marks omitted). But unlike the foam manufacturer in *Haines*, Hamm has not made a sale to any California resident.[7] Löb Decl. at ¶¶ 12–14.

Finally, plaintiffs assert that regardless of the shipments or the FOB designation, Hamm "purposefully avails itself to the benefits of the California market by including language in its manuals to comply with" California's Proposition 65 at the request of Wirtgen America, allowing Hamm products to be sold in California. Oppo. at 10. Although Hamm admits that their English safety manuals feature a Proposition 65 warning, it includes the warning in every manual provided with every roller that is shipped to an English-speaking country. Löb Decl. at ¶¶ 28, 28.1. It states that this was done "without knowledge or consideration" of whether the machine would be sold in California. *Id.*

Compliance with Proposition 65 alone is not enough to establish personal jurisdiction in California. *See Miller v. Peter Thomas Roth, LLC*, No. 19-cv-00698-WHA, 2019 WL 1507767, \*3 (N.D. Cal. April 5, 2019) (finding that defendant previously settling Proposition 65 claim was not enough to show that it had purposefully availed itself of the benefits and protections of California law); *Milo Enters., Inc. v. Bird-X, Inc.*, No. 18-cv-03857, 2018 WL 6430117, at \*3

---

[7] At the hearing, plaintiffs also cited *Aurora Corp of Am. v. Michlin Prosperity Co.*, No. 13-cv-03516, 2015 WL 5768340 (C.D. Cal. Sept. 29, 2015), to argue that multiple shipments to a forum state can be evidence of additional purposeful activity, even when those shipments are made under the direction of another party. Why they think that case helps them is unclear. There, the court did not find that the defendant had purposefully availed itself of California's jurisdiction because the plaintiffs failed to submit evidence of "extensive negotiations, warranties, multiple shipments, or the amount of sales or revenue arising from shipment(s) to California" that would support an exercise of personal jurisdiction. *Id.* at \*6-8. That is true in this case as well. As in *Aurora*, the plaintiffs have not submitted evidence of any additional factors that would suggest jurisdiction over Hamm in California is proper.

1  (C.D. Cal. Sept. 12, 2018) (finding that compliance with Proposition 65 was insufficient to show

2  that defendant purposefully directed its activities to California in a "substantial, and not

3  generalized, way."). The mere inclusion of the warning at the request of a purchaser is not a

4  purposeful act directed at California. Löb testified in his deposition that no one at Hamm

5  reviewed or discussed California regulations prior to 2016. Löb Depo. at 117. When Hamm first

6  included the safety manuals with its products, it was done without conversation about adding the

7  Proposition 65 warning. *Id.* at 65. Further, every customer who selects to receive English

8  documentation receives the manual with the Proposition 65 warning in it, regardless of what

9  country or state they are in. *Id.* at 66–67. These facts do not demonstrate that Hamm purposefully

10  targeted California.

11        Hamm has produced evidence showing its lack of presence in or advertisements to

12  California, that less than 1% of its products were shipped to California, that its website is passive,

13  and that it includes Proposition 65 warnings in its manuals for all English speaking countries.

14  This evidence, taken together and unrebutted by plaintiffs, does not support a finding that Hamm

15  has purposefully availed itself of California. It is not subject to specific personal jurisdiction in

16  this state. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir.

17  2013) (holding that if any of the prongs are not satisfied, jurisdiction is improper).

18        **B. Arising out of forum-related activities**

19        Although plaintiffs have failed to satisfy the first prong of the stream of commerce plus

20  test, in the interest of thoroughness I address their arguments related to the second prong.[8] The

21  second prong requires a plaintiff's claim to arise out of or relate to a defendant's forum-related

22  activities. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017). The Ninth

23  Circuit analyzes this as a "but for" test. *Wholesale Nat. Gas*, 715 F.3d at 742. "Under the but for

24  test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists

25  between those contacts and the cause of action." *Id.* (internal quotation marks and citation

26

27  _____

    [8] I will not address the third (reasonableness) prong because plaintiffs' failure to satisfy the first or
28  second prong is dispositive.

10

1    omitted).  Plaintiffs must show that Maurillo Rojas would not have suffered his injuries "but for"

2    Hamm's forum-related acts.  *See id.*

3        Although plaintiffs' brief is long on argument in this respect, it is short on facts.  Plaintiffs

4    claim that this prong is satisfied because Hamm placed the roller into the stream of commerce and

5    it arrived in California through Wirtgen America.  Oppo. at 10–15.  But Hamm did not direct the

6    subject roller to California.  Hamm's confirmation of Wirtgen America's order for the roller here

7    states "CIP US Port Incoterms 2010."[9]  Order Confirmation, attached as Exhibit 2 to Löb Decl.

8    [Dkt. No. 62-6].  The destination was later specified as Houston.  Invoice, attached as Exhibit 5 to

9    Löb Decl. [Dkt. 62-6].  The bill of lading specifies that the Port of Loading was Bremerhaven, and

10   the Port of Discharge is listed as Houston.  Bill of Lading, attached as Exhibit 3 to Löb Decl.  It

11   remains unclear from the record how the subject roller arrived in California.

12       Plaintiffs principally rely on two cases to support their argument.  First, they cite *Bristol-*

13   *Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017) to argue that even though

14   Hamm did not develop or market its products in California, placing the roller into the stream of

15   commerce satisfies this second prong.  Oppo. at 12–13.  But the facts of *Bristol-Myers* are too

16   different for it to apply here.

17       In *Bristol-Myers,* more than 600 plaintiffs—including 86 from California—filed claims in

18   California state court against Bristol-Myers for injuries allegedly caused by the prescription drug

19   Plavix.  137 S. Ct. at 1777–78.  Bristol-Myers argued that the court lacked specific jurisdiction

20   over the nonresidents' claims because, while it had employees and did business in California, none

21   of the nonresidents had purchased Plavix or been injured by it in California.  *Id.* at 1777–78, 1782.

22   The Court agreed, and found that the state court lacked jurisdiction over the non-resident

23

24   ───────────────────

[9] Incoterms—an abbreviation of "international commercial terms"—are rules that serve as terms

25   of a contract of sale.  Jan Ramberg, *ICC Guide to Incoterms 2010: Understanding and Practical Use*, attached as Appendix I to MTD at 5 [Dkt. No. 62-1].  "CIP" stands for "Carriage and

26   Insurance Paid to," and the place of destination follows.  *Id.* at 25.  "'Carriage and Insurance Paid to' means that the seller delivers the goods to the carrier or another person nominated by the seller

27   at an agreed place . . . and that seller must contract for and pay the costs of carriage necessary to bring the goods to the named place of destination."  *Id.*  The place of delivery is where the risk

28   passes to the buyer, unless the parties contract otherwise.  *Id.*

11

1  plaintiffs' claims. *Id.* at 1783–84.

2  Plaintiffs argue that this supports their claim of specific personal jurisdiction against

3  Hamm because the court found no issue with the state court's jurisdiction over the resident

4  plaintiffs' claims even though Bristol-Myers did not develop Plavix in California, create a

5  marketing strategy for Plavix in California, or manufacture, label, package, or work on the

6  regulatory approval of the product in California. *Id.* at 1778. But that is where the similarities

7  end. Bristol-Myers sold almost 187 million Plavix pills in California and took in more than $900

8  million from those sales. *Id.* The resident plaintiffs also obtained prescriptions for, possessed, and

9  ingested Plavix in California. *Id.* at 1781. Bristol-Myers employed over 400 people in California,

10  maintained facilities in California, bought advertising in California, and contracted with a

11  California-based distributor. *See id.* at 1786 (Sotomayor, J., dissenting). Contrast that with this

12  case: since at least 2004, Hamm has not employed anyone in California, owned real estate in

13  California, purchased advertising in California, nor entered into a contract with a California

14  resident. Löb Decl. at ¶¶ 7, 8, 11, 13. *Bristol-Myers* does not help plaintiffs.

15  Plaintiffs next contend that even though Hamm did not ship the subject roller directly to

16  California, the shipment is the direct cause of Rojas's injuries because Hamm knew that some of

17  its rollers were sent to California. Oppo. at 14–15. This argument is unpersuasive because it does

18  not establish the required "direct nexus" between Hamm's actions and Rojas's injuries. *See*

19  *Wholesale Nat. Gas*, 715 F.3d at 742. Plaintiffs' reliance on *Rhodehouse v. Ford Motor Co.*, No.

20  16-cv-01892, 2016 WL 7104238 (E.D. Cal. Dec. 5, 2016) to support this argument is also

21  misplaced. Oppo. at 14. There, the plaintiff was injured while riding as a passenger in a Ford F-

22  350 truck when it "rolled over, the roof crushed, and [the] seatbelt failed." *Rhodehouse*, 2016 WL

23  7104238, at *1. Ford moved to dismiss for lack of personal jurisdiction, arguing that because the

24  truck was manufactured in Kentucky and sold to an independently-owned dealership in Canada,

25  Ford's California contacts could not have been the but for cause of the plaintiff's injuries. *Id.* at

26  *1, *3. The court rejected this argument, noting Ford's vehicles saturate California roads and

27  dealerships, that Ford advertisements pervade California media, that Ford created a "strong and

28  pervasive connections to California," and that it "specifically seeks, or expects" to sell its cars in

12

1  California. *Id.* at \*4. Because Ford's connections to California were so pervasive, "the fact that

2  the accident injured a California resident and occurred in the state of California in a California-

3  registered vehicle" was enough to establish but for causation. *Id.* The court used these

4  connections to find that "without Ford's extensive advertising and network of dealerships in

5  California," the truck that the plaintiff was injured in would not have been in California, even

6  though he did not purchase it there. *Id.* at \*2. Here, Hamm lacks the strong and pervasive

7  connections to California that Ford had for *Rhodehouse* to be of much value.

8  　　　　Finally, plaintiffs argue that because "[the] rollers shipped by Hamm into California

9  contain the same defects alleged in Plaintiffs' Complaint," Hamm is subject to specific jurisdiction

10  in California. That is not how the "but for" test works. Plaintiffs have not sufficiently

11  demonstrated that there is a direct nexus between their injuries and Hamm's California contacts.

12  Plaintiffs are unable to meet the second prong of the stream-of-commerce plus test.

13  **II.　　ALTER EGO RELATIONSHIP**

14  　　　　In the alternative, plaintiffs argue that Hamm is subject to specific jurisdiction because it is

15  the alter ego of Wirtgen America and that Wirtgen America's California contacts may be imputed

16  to Hamm.[10] Oppo. at 17–18. The alter ego theory of specific jurisdiction allows the contacts of

17  the local subsidiary to be imputed to the foreign parent corporation when "the foreign entity is not

18  really separate from its domestic affiliate." *Williams*, 851 F.3d at 1021. "To satisfy this test, a

19  plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership

20  that the separate personalities of the two entities no longer exist and (2) that failure to disregard

21  their separate identities would result in fraud or injustice." *Id.* (citation and internal quotation

22  marks omitted).

23  　　　　Courts consider nine factors when assessing the first prong of the alter ego test: (1) the

24  commingling of funds and other assets of the entities, (2) the holding out by one entity that it is

25

26  [10] In their Opposition to Hamm's first Motion to Dismiss, plaintiffs argued that the designation of
"Sunbelt Green" on Wirtgen America's Order Confirmation indicated that Hamm may have been

27  more involved with Wirtgen America's clients than was initially apparent. [Dkt. No. 35].
However, Löb testified that this is not a color that Hamm purchases or otherwise creates, but is a

28  color that Wirtgen America requested for its customer, named the color "Sunbelt Green," and
requested that Hamm save the color for future orders. Löb Depo. at 69–74.

liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the

same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other,

(6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of

corporate records, and (9) identical directors and officers. *Stewart v. Screen Gems-EMI Music,*

*Inc.*, 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (Corley, J.). This inquiry determines whether "the

parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of

the former." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). "This test envisions

pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the

subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."

*Id.* (citation and internal quotation marks omitted). If the plaintiff cannot succeed in showing the

first prong, courts need not analyze the second. *See id.* at 1075 n.9.

Plaintiffs have not established that Hamm exercises "pervasive control" over Wirtgen

America's day-to-day operations. *See id.* at 1073. Hamm submits a declaration stating that

Hamm and Wirtgen America do not direct and control each other's activities, offering the

following examples:

> "[T]here is no agreement that requires Wirtgen America to purchase
> a certain number of products from Hamm AG during some set period;
>
> [T]here is no agreement that directs Wirtgen America on how to
> advertise Hamm AG's products;
>
> [T]here is no agreement that limits Wirtgen America as to whom it
> may contract for the sale or further distribution of Hamm AG's
> products;
>
> [T]here is no agreement that requires Wirtgen America to inventory
> some specified number of Hamm AG parts; and
>
> [T]here is no agreement that directs Wirtgen America on how to
> provide warranty or other services for Hamm AG products."

Löb Decl. at ¶¶ 22.1–22.5. These facts are not disputed and do not provide a basis to find that

there is such "unity of interest and ownership" between Hamm and Wirtgen America that their

separate identities no longer exist.

Plaintiffs ignore the above factors, and instead argue (without authority) that because

Hamm and Wirtgen America are members of a "single, unified company," the actions of Wirtgen

America should be imputed to Hamm. Oppo. at 17. Both Hamm and Wirtgen America are members of the Wirtgen Group Holding GmbH. *Id*. at 17–18. Hamm is a subsidiary of Wirtgen Road Technologies GmbH (headquartered in Windhagen, Germany) and Wirtgen America is a subsidiary of Wirtgen, Inc. (headquartered in Nashville, Tennessee). Wirtgen Group Organization Chart ("Organization Chart"), attached as Exhibit G to Hamilton Decl. [Dkt. No. 65]. Both Wirtgen Road Technologies and Wirtgen, Inc. are subsidiaries of Wirtgen Group Holding GmbH. *Id.* Hamm is also part of the Wirtgen Group, a "unified marketing moniker to promote all brands within the group."[11] Oppo. at 17–18. The Wirtgen Group refers to five independent manufacturing companies: Wirtgen GmbH, Joseph Voegele AG, Hamm AG, Kleeman GmbH, and Benninghoven GmbH. Löb Depo. at 41.

These facts are not enough to establish the type of unity of interest the alter ego theory requires. Two independent legal entities doing business under a global organization of member firms is not enough to demonstrate an alter ego relationship. *See Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-cv-03588-WHA, 2011 WL 4713233, at *6–8 (N.D. Cal. Oct. 7, 2011) (declining to find a non-resident defendant the alter ego of a resident where the evidence showed they were merely affiliated members of a global marketing group). Though Hamm and Wirtgen America are affiliated companies, there is no evidence that they are extensions of each other. While Hamm sells 90% of its United-States bound products to Wirtgen America, it also contracts with other dealers, Wacker Neuson Logistics Americas, LLC and Resansil, Inc. *See* Löb Decl. at ¶ 15; Löb Depo. at 55. Wirtgen America does not solely import products from Hamm, but also imports from the other brands that make up the Wirtgen Group. Oppo. at 18. This does not make the two companies alter egos. *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 13-cv-05058-LHK, 2015 WL 400251, at *7–8 (N.D. Cal. Jan. 29, 2015) (finding no alter ego relationship where the subsidiary was not the exclusive importer of and did not handle all sales and distribution for the parent).

---

[11] In his deposition, Löb testified that the inclusion of these brands under the moniker "The Wirtgen Group" means that these brands "appear under the single name or under the single sign of Wirtgen Group, so, for example, at trade shows, that they would be there with that unitary Wirtgen Group name." Löb Depo. at 40.

1        Plaintiffs argue that Hamm and Wirtgen America demonstrate "unity of interest and

2    ownership" by employing "similar marketing," having nearly identical websites, attending

3    promotional conferences together, and putting both their logos on certain documents." Oppo. at

4    18–19. While it is true that Hamm and Wirtgen America have websites that look nearly identical

5    and that Hamm's website re-directs American visitors to Wirtgen America's website, "courts

6    recognize that separate corporate entities presenting themselves as one online does not rise to the

7    level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health*

8    *Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (Gonzalez Rogers, J.). Similarly, just because

9    entities present themselves as "one integrated company" for marketing purposes does not, on its

10    own, establish that companies are alter egos. *See id.* at 983–84.

11        Plaintiffs also note that Jürgen Wirtgen was the chairman of Hamm's supervisory board

12    and a member of Wirtgen America's Board of Directors at the same time.[12] Oppo. at 18. But, as

13    Hamm correctly notes, there is a "well established principle of corporate law that directors and

14    officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the

15    two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524

16    U.S. 51, 69 (1998) (internal marks and citations omitted). That Jürgen Wirtgen was at one time a

17    member of Hamm's supervisory board and Wirtgen America's Board of Directors is not sufficient

18    to show that the two companies are not separate entities.[13] Plaintiffs fail to establish the first

19    prong of this analysis.

20        Turning to the second prong, plaintiffs argue that recognizing Hamm and Wirtgen

21    America's separate identities would result in fraud or injustice because it would require plaintiffs

22    to seek discovery from Hamm as a third party. Oppo. at 19. Plaintiffs contend that this would

23    "significantly [hamper] the remaining parties' preparation of the case and [result] in a more

24    burdensome, time consuming, and expensive case for all involved." *Id.* Hamm notes that

25

26    ———————————

27    [12] According to Hamm, German law has a two-tier board system: the supervisory board (Aufsichtsrat) and the management board (Vorstand). MTD at 9 n.3. The supervisory board appoints members of the management board and this board runs the business. *Id.*

28    [13] Currently, no officers of Hamm are also officers of Wirtgen America. Löb Decl. at ¶ 21.

1    plaintiffs provide no authority to show that these reasons constitute fraud or injustice under this

2    test.  Hamm's Reply to the Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction

3    ("Reply") at 13 [Dkt. No. 69].

4         Courts in this District have previously found fraud or injustice would result when the

5    dismissal of the foreign defendant would result in the denial of an adequate remedy.  *See Indep.*

6    *Elec. Supply Inc. v. Solar Installs, Inc.*, No. 18-cv-01435-KAW, 2018 WL 6092800, at *9 (N.D.

7    Cal. Nov. 21, 2018) (finding fraud or injustice will result if the defendant is dismissed because the

8    plaintiff would be left with one insolvent defendant); *Ferrigno v. Philips Elecs. N. Am. Corp.*, No.

9    09-cv-03085-RMW, 2010 WL 2219975, at *4 (N.D. Cal. June 1, 2010) (finding plaintiff has not

10   established fraud or injustice would result by stating he "may" be left without a remedy upon

11   dismissal of foreign defendants because domestic defendants had appeared and defended the

12   action); *Miller v. Int'l Bus. Machs. Corp.*, No. 02-cv-2118-MJJ, 2006 WL 2792416, at *7 (N.D.

13   Cal. Sept. 26, 2006) (holding that to make this showing, "[the plaintiff] must identify a right that

14   will be defeated if he is not permitted to pursue his claims against [the defendant].").  Wirtgen

15   America and Sunbelt have both appeared and defended this action and plaintiffs have not

16   submitted any evidence to show that either of these parties will be unable to pay a judgment.

17   Further, Hamm states that "[u]nder California law, Wirtgen America is subject to liability for any

18   defect in the subject roller should Plaintiffs prove such exists and is a cause of their injuries."

19   Reply at 13.  Therefore, plaintiffs have not succeeded in showing that fraud or injustice will

20   occur, and have not established that Hamm and Wirtgen America are alter egos of each other.

21                                   **CONCLUSION**

22        For the foregoing reasons, Hamm's motion to dismiss for lack of personal jurisdiction is

23   granted.

24        **IT IS SO ORDERED.**

25   Dated: August 12, 2019

26

27   _____

28   William H. Orrick
     United States District Judge

United States District Court
Northern District of California